UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WESLEY HUNTER,<br><br>        Plaintiff,<br><br>    v.<br><br>PRE-PAID LEGAL SERVICES, INC.,<br><br>        Defendant. | Case No. 25-cv-05399-RFL<br><br>**ORDER GRANTING MOTION TO COMPEL ARBITRATION**<br><br>Re: Dkt. No. 15 |

Defendant Pre-Paid Legal Services, more commonly known as "LegalShield," brings this Motion to Compel Arbitration and Dismiss Class Claims raised by Plaintiff Wesley Hunter. (Dkt. No. 15-1 ("Mot.").) Specifically, LegalShield seeks to enforce the binding arbitration clause found in the Policies and Procedures of the Associate Agreement to which Hunter allegedly agreed. Although the provisions of the arbitration clause selecting Oklahoma as the forum and the governing choice-of-law must be severed as unconscionable, the arbitration clause as modified is enforceable, and LegalShield's Motion is granted.

**I.      FACTUAL BACKGROUND**

LegalShield is an Oklahoma corporation that provides legal services to people and small businesses that purchase a membership with the company. (Dkt. 15-3 ("Hudson Decl. ISO Mot.") ¶ 4.) LegalShield is structured as a multi-level marketing ("MLM") business; the company recruits individuals to participate in its Associate Program, and these Associates then manage the marketing and selling of LegalShield's memberships to customers. (*Id.* ¶ 7.) LegalShield maintains that its Associates are independent contractors, rather than employees, due to its lack of direct oversight of Associates' operations. (*Id.* ¶¶ 8–9.)

1

Hunter became a LegalShield Associate on December 12, 2024.  (Hudson Decl. ISO Mot. ¶ 16.)  LegalShield has submitted evidence that, at that time and all other relevant times, it required new Associates to sign up by completing a series of Start Up Questions.  (*Id.*; Dkt. No. 18-1 ("Hudson Decl. ISO Reply") ¶ 5.)  To complete those Start Up Questions, the user must click a "CONTINUE" button accompanied by the following statement: "By clicking CONTINUE I accept and agree to all the terms."  (Hudson Decl. ISO Reply ¶ 5.)  The word "terms" is a visible blue hyperlink.  If a user clicks on it, they are transported to a one-page "Associate Terms" screen, which contains the attestation: "I have read the company policies and procedures."  The phrase "policies and procedures" is hyperlinked in blue.  (*Id.* ¶¶ 5–6.)  If the user clicks on that hyperlink, they arrive at a two-page PDF document entitled "Policies and Procedures" containing the following language:

> All disputes and claims related to LegalShield, the Associate Agreement, these Policies and Procedures and any other LegalShield policies, products and services, the rights and obligations of an Associate and LegalShield, or any other claims or causes of action between the Associate or LegalShield or any of its officers, directors, employees or affiliates, whether statutory in tort in contract or otherwise, shall be settled totally and finally by arbitration in Oklahoma City, Oklahoma, in accordance with the Commercial Arbitration Rules of the American Arbitration Association. However, Associate understands and expressly agrees that LegalShield may seek a temporary restraining order and/or preliminary injunction in state or federal court to maintain the status quo pending determination of the dispute. If any Associate files a claim or counterclaim against LegalShield or any of its officers, directors, employees or affiliates in any such arbitration, an Associate shall do so only on an individual basis and not with any other Associate or as part of a class action. Judgment on any award may be entered in the Pontotoc County District Court or in the United States District Court for the Eastern District of Oklahoma. The Associate consents to the jurisdiction and venue of such arbitration and such courts.

(*Id.* ¶ 7; Hudson Decl. ISO Mot. Ex. C ("Associate Agreement") ¶ 23.)[1]

Hunter was fired as an Associate on January 22, 2025.  (Hudson Decl. ISO Mot. ¶ 18.)

---

[1] Hunter's evidentiary objections to Hudson's reply declaration are denied. (Dkt. No. 19 at 2–4.) Hudson has sufficient foundation to testify as to the Associate application process based on her role as LegalShield's Vice President of Associate Marketing & Incentives.  (*See* Hudson Decl. ISO Reply ¶ 1.)  And the Hudson reply declaration is appropriately responsive to Hunter's arguments in his opposition.

Then, on May 28, Hunter brought this proposed class action complaint against LegalShield in the Superior Court of California for a variety of alleged violations of California state wage and labor laws stemming from LegalShield misidentifying its Associates as independent contractors rather than employees. (Dkt. No. 2-2 ("Compl.").) LegalShield removed to federal court and requested that Hunter stipulate to individual binding arbitration of his claims pursuant to the arbitration clause of the Associate Agreement. (Dkt. No. 15-2 ("Rosenthal Decl. ISO Mot.") Ex. A.) Hunter declined to stipulate to arbitration, leading LegalShield to file its Motion to Compel Arbitration and Dismiss Class Claims.

## II.     ANALYSIS

### A.     Choice-of-Law

LegalShield argues that, pursuant to the choice-of-law provision of the Associate Agreement, the enforceability of the arbitration clause should be determined according to Oklahoma law, rather than California. (Mot. at 21–23; Associate Agreement ¶ 23 ("The Associate Agreement and Policies and Procedures will be governed by and construed in accordance with the laws of the State of Oklahoma.").)[2] Hunter contends that California law applies. (Dkt. No. 17 ("Opp'n") at 10.) The Court concludes that California law should apply.

"Federal courts sitting in diversity look to the law of the forum state . . . when making choice of law determinations. Under California law, the parties' choice of law will govern unless section 187(2) of the Restatement (Second) of Conflict of Laws dictates a different result." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) (citation omitted). Section 187(2) requires enforcement of a valid choice-of-law provision in a contract except where:

   a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

   b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has materially greater interest than the chosen state in the determination of the particular issue.

---

[2] Citation to page numbers refer to the ECF pagination.

Restatement (Second) of Conflict of Laws § 187(2) (1971).

The first prong of the Restatement test is satisfied here.  LegalShield, an Oklahoma corporation that maintains its principal place of business in the state, has a substantial relationship to Oklahoma.  *See ABF Cap. Corp. v. Osley*, 414 F.3d 1061, 1065 (9th Cir. 2005) ("A substantial relationship exists where one of the parties is domiciled or incorporated in the chosen state.").  But the second prong is not.  As discussed further below, California law bars employers from requiring employees who work in California to agree as a condition of employment to give up the protection of California law, including California Labor Law.  *See* Cal. Lab. Code § 925(a).  That reflects a fundamental policy choice that would be overridden through the application of Oklahoma law.  *See also Savetsky v. Pre-Paid Legal Servs., Inc.*, 2015 WL 4593744, at *7 (N.D. Cal. July 30, 2015) (*Savetsky II*) (applying California law).  And while Oklahoma certainly has an interest in the oversight of its native corporations, California has a greater public policy interest in protecting one of its residents from allegedly illegal employment practices concerning work done in California.  *See Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1187 (9th Cir.) ("[E]very state has an interest in having its law applied to its resident claimants."), *opinion amended on denial of reh'g*, 273 F.3d 1266 (9th Cir. 2001).  Accordingly, California law will be applied to determine whether the Associate Agreement's arbitration clause is enforceable.

      **B.**      **Assent to the Associate Agreement Containing the Arbitration Clause**

Hunter argues that LegalShield has not met its burden to show that he consented to the arbitration clause because it "failed to provide any evidence that [he] actually clicked through the electronic hyperlinks in the Associate Terms or ever even saw Defendant's Policies and Procedures containing the arbitration agreement."  (Opp'n at 10); *see also Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 236 (2012) ("The party seeking arbitration bears the burden of proving the existence of an arbitration agreement." (citation omitted)).  He asserts that he "does not believe" that he ever saw or reviewed the Associate Agreement's arbitration clause, (Dkt. No. 17-2 ("Hunter Decl.") ¶ 3), and demands that LegalShield produce

4

metadata as proof he viewed the Policies & Procedures, (Opp'n at 10.)

Mutual assent to an online contract does not require the additional evidence identified by Hunter. "[W]hen transactions occur over the internet . . . in the absence of actual notice, a manifestation of assent may be inferred from the consumer's actions on the website—including, for example, checking boxes and clicking buttons." *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 461 (2021). Here, as detailed above, to enroll as an Associate, Hunter had to click a "CONTINUE" button accompanied by the statement: "By clicking CONTINUE I accept and agree to all the terms." The word "terms" was hyperlinked in blue, and linked to a brief Associate Terms page attesting that he had read the "policies and procedures." The "policies and procedures" were hyperlinked in blue to a two-page Associate Agreement with the relevant arbitration clause.

As such, the record demonstrates that the Associate Agreement is a "clickwrap" agreement "in which an internet user accepts a website's terms of use by clicking an 'I agree' or 'I accept' button, with a link to the agreement readily available." *Sellers*, 73. Cal. App. 5th at 463; *see also Savetsky II*, 2015 WL 4593744, at *4 (finding that LegalShield's Associate Agreement "looks like clickwrap"). Clickwrap agreements are presumptively enforceable under California law, and whether the user actually reviewed the underlying terms is irrelevant so long as they were provided a reasonable opportunity to do so and affirmatively indicated their assent. *See Tompkins v. 23andMe, Inc.*, 2014 WL 2903752, at *8 (N.D. Cal. June 25, 2014), *aff'd*, 840 F.3d 1016 (9th Cir. 2016); *Mohamed v. Uber Techs., Inc.*, 109 F.Supp.3d 1185, 1190, 1195–97 (N.D. Cal. 2015) *aff'd in part, rev'd in part and remanded on other grounds*, 848 F.3d 1201 (9th Cir. 2016). Therefore, LegalShield has met its burden to demonstrate that Hunter assented to the Associate Agreement, including the arbitration clause.

### C.     Unconscionability

Hunter separately argues that the arbitration clause of the Associate Agreement is unconscionable and thus unenforceable. (Opp'n at 14); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 340 (2011) (holding that the Federal Arbitration Act allows for arbitration agreements

to be invalidated by "generally applicable contract defenses, such as . . . unconscionability." (citation omitted)). "In California, contractual unconscionability has procedural and substantive components," which are evaluated on a sliding scale to determine whether an agreement is unenforceable. *Blair v. INFORM Software Corp.*, 2023 WL 137471, at *6 (N.D. Cal. Jan. 8, 2023). As the party asserting the defense, Hunter has the burden of proving unconscionability. *See Ronderos v. USF Reddaway, Inc.*, 114 F.4th 1080, 1089 (9th Cir. 2024).

### 1. Procedural Unconscionability

Procedural unconscionability "addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power." *See OTO LLC v. Kho*, 8 Cal. 5th 111, 125 (2019) (citation omitted). Because Hunter and other Associate applicants are unable to opt out of the arbitration clause, the Associate Agreement is a contract of adhesion, which presents a low level of procedural unconscionability. *See Atl. Home Health Care, LLC v. Wynwest Advance LLC*, 2025 WL 2603100, at *1 (N.D. Cal. Sept. 9, 2025). But that low level of procedural unconscionability on its own is insufficient to render the arbitration clause unenforceable, particularly because the record does not contain any evidence of unfair surprise to Hunter. While Hunter claims that the arbitration clause was "buried," the hyperlinks to the Associate Terms and Policies & Procedures were conspicuous, and the document containing the arbitration clause was only two pages long. (Opp'n at 16.) Further, Hunter does not claim that he lacked the time to review the terms before agreeing. *See Loewen v. Lyft, Inc.*, 129 F.Supp.3d 945, 957 (N.D. Cal. 2015) (finding that plaintiff could not "claim surprise with respect to . . . the arbitration clause . . . where they . . . assented to the terms of the TOS by clicking 'I agree' on the Lyft App").

### 2. Substantive Unconscionability

"Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided." *Kho*, 8 Cal. 5th at 125 (citation omitted). Although most of the provisions that Hunter challenges are not substantively unconscionable, two provisions do in fact rise to that level.

6

The non-compete clause in the Associate Policies and Procedures does not render the arbitration provision unconscionable. (Opp'n at 17.) Regardless whether the non-compete provision is otherwise unenforceable under California law, arbitration clauses are severable from the rest of the contract. "[U]nless the challenge is to the arbitration clause itself, the issue of [a] contract's validity is considered by the arbitrator in the first instance." *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445–46 (2006). As such, the validity of the non-compete clause does not bear on the enforceability of the arbitration provision.

Nor is it unconscionable that LegalShield "may seek a temporary restraining order and/or preliminary injunction in state or federal court to maintain the status quo pending determination of the dispute." (Associate Agreement ¶ 23; Opp'n at 20.) That provision does not expand LegalShield's legal rights beyond those already available under Cal. Code Civ. Proc. § 1281.8(b), which allows a "party to an arbitration agreement" to seek preliminary relief from a court if "the award to which the applicant may be entitled may be rendered ineffectual without provisional relief." A clause "which does no more than restate existing law . . . does not render the agreement unconscionable." *Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1241 (2016) (citation omitted). The provision is also not one-sided. The arbitration agreement incorporates the American Arbitration Association's Employment Rules, which authorizes either party to seek such preliminary relief from the courts. AAA Employment Rule 36(h) ("A request for interim measures addressed by a party to a judicial authority shall not be deemed incompatible with this Rule, the agreement to arbitrate or a waiver of the right to arbitrate.").[3]

LegalShield's reservation of the right to unilaterally modify the Associate Agreement, including the arbitration clause, is not unconscionable either. (Opp'n at 17; Associate

---

[3] The Associate Agreement states that all claims will be arbitrated "in accordance with the Commercial Arbitration Rules of the American Arbitration Association." (Associate Agreement ¶ 23.) The Commercial Arbitration Rules incorporate and "apply the [AAA] Employment/Workplace Rules to any dispute between an individual employee or an independent contractor (working or performing as an individual and not incorporated) and a business or organization and the dispute involves work or work-related claims" like the ones at issue in this case. AAA Commercial Arbitration Rules and Mediation Procedures at 10.

Agreement ¶ 23 ("[T]hese policies may be amended from time to time by LegalShield by publication in a means reasonably available to Associates generally.").) Despite lacking mutuality, unilateral modification clauses that include reasonable notice restrictions do not render a contract substantively unconscionable, as "California courts have held that the implied covenant of good faith and fair dealing prevents a party from exercising its rights under a unilateral modification clause in a way that would make it unconscionable." *Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 480 (9th Cir. 2024) (citation omitted); *see also Asmus v. Pacific Bell*, 23 Cal.4th 1, 16 (2000) ("[T]he fact that one party reserves the implied power to terminate or modify a unilateral contract is not fatal to its enforcement, if the exercise of the power is subject to limitations, such as fairness and reasonable notice.").

The provisions concerning Hunter's arbitration costs are likewise not unconscionable. (Opp'n at 19.) Employers imposing mandatory arbitration generally may not "require the employee to bear any type of expense that the employee would not be required to bear if he or she were free to bring the action in court." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 110–11 (2000). But the arbitration agreement does not require that here. The AAA Employment Rules, which were incorporated by reference, require the employer to cover payment of all costs unique to arbitration. *See Lane v. Francis Capital Mgmt. LLC*, 224 Cal.App.4th 676, 692–94 (2014) (holding AAA Employment Rules satisfy *Armendariz* requirements). LegalShield concedes that it must pay Hunter's legal fees unique to arbitration, and to be clear, the Court orders that LegalShield must do so.

Two provisions cited by Hunter—the Oklahoma choice of law and choice of forum provisions—do rise to the level of substantive unconscionability. California Labor Code Section 925(a) provides that "[an] employer shall not require an employee who primarily resides and works in California, as a condition of employment, to agree to a provision that would . . . (1) Require the employee to adjudicate outside of California a claim arising in California" or "(2) Deprive the employee of the substantive protection of California law with respect to a controversy arising in California." Although the Ninth Circuit has not expressly

addressed the issue, district courts have overwhelmingly applied this provision to disputes about misclassification, like this one, where the plaintiffs have plausibly pled that they were in fact employees rather than independent contractors. *See, e.g.*, *Yeomans v. World Fin. Grp. Ins. Agency, Inc.*, 2019 WL 5789273, at *3 (N.D. Cal. Nov. 6, 2019) (declining to transfer misclassification suit pursuant to forum selection clause, based on Section 925(a)). Hunter plausibly alleges that he and other Associates were employees, not independent contractors, because they lacked business autonomy, had to attend mandatory training, and had to follow guidelines dictating how they conducted sales and recruited other salespeople, among other things. (Compl. ¶ 26.) Though LegalShield disputes the plausibility of those allegations, LegalShield does not identify what defects render those allegations insufficient. (Mot. at 32 n. 3.) Because Hunter has adequately pled that he was an employee, it would be unconscionable and violate the public policy behind Section 925(a) to require him to arbitrate his claims in Oklahoma under Oklahoma law. *See Peters v. Guaranteed Rate, Inc.*, 2025 WL 1904424, at *2 (9th Cir. July 10, 2025) (holding that agreement requiring arbitration in Illinois for California employee violated Section 925 and was substantively unconscionable).

**D.      Severability**

While the choice of law and choice of forum provisions of the arbitration clause are substantively unconscionable, the enforceability analysis does not end there, as the Associate Agreement contains a severability provision:

> In the event that a provision of the Associate Agreement or these Policies and Procedures is held to be invalid or unenforceable, such provision shall be reformed only to the extent necessary to make it enforceable, and the balance of the Agreement and Policies and Procedures will remain in full force and effect.

(Associate Agreement ¶ 22.) "California law grants broad leeway to trial courts to remedy unconscionable contracts." *Heckman v. Live Nation Ent., Inc.*, 120 F.4th 670, 688 (9th Cir. 2024). To determine whether severance is appropriate in a specific case, courts look to "whether the central purpose of the contract is tainted with illegality" and whether the defendant "engaged

9

in a 'systemic effort to impose arbitration . . . as an inferior forum.'" *Id.* (quoting *Armendariz*, 24 Cal. 4th at 124); *see also Lang v. Skytap, Inc.*, 347 F. Supp. 3d 420, 431–32 (N.D. Cal. 2018) ("[A]n arbitration agreement is unenforceable only when the only way to cure the unconscionability is in effect to rewrite the agreement." (citation omitted)). There is no evidence that such pervasive nefarious intent exists here. The two unconscionable provisions are directly traceable to Oklahoma being LegalShield's home jurisdiction. Hunter offers no basis to find that LegalShield's preference for Oklahoma is unreasonable or indicative of a broader scheme to deprive Associates of their rights. Incorporation of the AAA Employment Rules into the Associate Agreement further supports a finding that the arbitration provisions are generally not unconscionable. Accordingly, the Oklahoma choice of law and forum selection provisions are severed from the Associate Agreement, and the remainder of the contract stands.

## III. CONCLUSION

For the forgoing reasons, the language blacklined below is **SEVERED** and **STRICKEN** from the Associate Agreement:

i. "~~The Associate Agreement and Policies and Procedures will be governed by and construed in accordance with the laws of Oklahoma.~~"

ii. "totally and finally by arbitration ~~in Oklahoma City, Oklahoma~~, . . .."

The remainder of the Associate Agreement remains valid. Therefore, LegalShield's Motion to Compel Binding Arbitration is **GRANTED**. LegalShield's Motion to Dismiss Hunter's Class Claims is **DENIED AS MOOT**. The parties are ordered to proceed to binding arbitration in the Northern District of California in accordance with the Associate Agreement as modified, with LegalShield to pay Hunter's legal fees unique to arbitration. This case is **STAYED** pending the results of arbitration. The parties shall file a joint status report every 180 days to update the Court on the arbitration proceedings, starting from the date of this Order, and shall file a status report within 14 days of the completion of arbitration proceedings.

**IT IS SO ORDERED.**

Dated: November 6, 2025

_____
RITA F. LIN
United States District Judge